THOMAS P. JENKINS vs. HARRIET S. MIDDLETON, Wife of JOHN I. MIDDLETON.

*Husband and Wife—Use of Wife's funds by Husband— Debtor and Creditor.*

Where a wife entrusted her funds to her husband's management, and never at any time objected to his making such use of them as he saw fit, and the same were used in the business of a firm of which he was a member, and neither he nor the firm ever made any express promise to her of repayment, and the firm afterwards failed, she cannot be regarded as a creditor so as to be entitled to receive a dividend from the assets of the firm.

If a man use the money of his wife with her acquiescence, she does not acquire a claim against him or his estate, unless at the time of receiving or using the money, he made her an express and specific promise to repay it. She cannot become a creditor; under these circumstances, by reason of the fact alone that her husband has received the benefit of her money.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, BRYAN, and' MCSHERRY, J.

*Robert Baldwin,* for the appellant.

Mr. Middleton was not Mrs. Middleton's trustee. Therefore, if she were able to trace the funds used by the firm back to her securities, which her husband received in the first instance, she would not be entitled to follow these funds out of his hands, under the equitable rule affecting the property of. a *cestui qui trust,* which may have been wrongfully disposed of or converted by the trustee. This

rule requires the trust property or the proceeds thereof, to be traced and identified.

Under this rule, money and negotiable obligations cannot be followed by the rightful owner, when they have been circulated or negotiated, or when the persons to whom they were passed, had not express notice of the trust. 2 *Perry on Trusts, secs.* 835-7.

"It has long been the settled law of this State, that the wife may become a creditor of the husband, in respect of money or property belonging to her, as her separate estate, which the husband has received *under an express promise at the time of repaying to her*. But if such money or other separate property of the wife, has been received by the husband, with the knowledge and acquiescence of the wife, without such express promise *at the time*, no implied assumpsit, either legal or equitable, will arise to support a claim against the husband or his estate. The wife having the *jus disponendi* of her separate property, if she thinks proper to let her husband have it or appropriate it, without any express promise or agreement at the time, to account for or repay her the amount so received or appropriated, she cannot afterwards set up a claim against the husband, upon the footing of a creditor. In such case she is taken to have acquiesced in the appropriation of the fund for the benefit of the family." *Grover & Baker Sewing Machine Co. vs. Radcliff*, 63 *Md.*, 500-1 ; *Farmers & Merchants Nat. Bank of Baltimore vs. Jenkins*, 65 *Md.*, 248-9.

Gratuitous statements of intention made by Mr. Middleton will not support a claim on the part of the wife. *Hill vs. Hill,* 38 *Md.*, 184, 185.

"To sustain a claim of the wife, by proof of such declarations of the husband made to third persons during coverture, would establish an exceedingly loose and dangerous mode of setting up secret equities between husband and wife." *Bowie vs. Stonestreet*, 6 *Md.*, 428-9.

*Randolph Barton,* for the appellee.

When the property was delivered to Mr. Middleton for his wife, he became, by operation of law, her trustee, and like any other trustee, he and his estate became liable for it. *Grover vs. Owings,* 16 *Md.,* 91.

He used it *without her knowledge and acquiescence,* and she was entitled to hold his estate liable for it. *Edelen vs. Edelen,* 11 *Md.,* 421 ; *Perry on Trusts, sec.* 665, *p.* 272 ; *Lewin on Trusts,* 778.

BRYAN, J., delivered the opinion of the Court.

On the fourth day of November, 1886, Middleton and Williams, trading under the firm name of J. I. Middleton & Co., made a deed of trust to Skipwith Wilmer for the benefit of their creditors. On the petition of the trustee, the Circuit Court of Baltimore City took jurisdiction of the trust, and ordered that the trustee publish the usual notice to creditors to prove their claims. A claim for eleven thousand four hundred and eighty-one dollars and twenty-two cents, was filed in behalf of Mrs. Middleton, the wife of one of the grantors, verified by the oath of her husband. Exceptions were filed by Thomas P. Jenkins, a creditor of the firm; but they were overruled, and Mrs. Middleton's claim was admitted to receive a dividend from the assets of the firm. An appeal was taken by the exceptant.

Mr. and Mrs. Middleton were both examined as witnesses. In his testimony, Middleton speaks of a marriage settlement on his wife; but as it was not produced, nor were its contents proved in the mode required by law, we cannot take it into consideration. The law, however, effectually secures a married woman's property to her, without any marriage settlement. It appears that a portion of Mrs. Middleton's property consisted of coupon bonds, certificates of stock of banks and railroads, mortgages and city stock, and that these securities were received by Mr. Middleton and were managed by him as he saw fit

for her benefit.  There is no doubt that the money now claimed from the firm was advanced to it by Middleton out of his wife's funds.  There is as little doubt from the evidence that Mrs. Middleton fully entrusted her business to her husband's management, and that she never, at any time, objected to anything that he saw fit to do with respect to her property.  She says in answer to the tenth interrogatory by the exceptant: "I should not have been willing for him to have used them for the firm, but should not have been unwilling for him to have used them for himself individually."  She testified that she learned for the first time in the autumn of 1886, just at the time that her husband became unfortunate, that he had used the proceeds of her bonds in the firm's business.  The thirteenth interrogatory is in these words: "Were you then willing for Mr. Middleton to have done what he did in so using your bonds in the business of his firm?"  Her answer is: "I never gave it a thought; when a thing is done it cannot be undone."  The fourteenth interrogatory is as follows: "Did you then think that Mr. Middleton in doing this, had acted wrongfully, or was guilty of a breach of trust and confidence towards you in so using your bonds?"  The record states that "under advice of counsel, the witness declines to answer any part of the question." On the demand of the exceptant, the question was certified to the Court for its decision whether the question should be answered by the witness, and the Court refused to compel the witness to answer it.  The twenty-eighth interrogatory was as follows: "Did you ever forbid his so using your securities or the proceeds thereof?"  She answers: "I was never asked anything about it; how could I forbid it, if I was never asked anything about it?" The twenty-ninth was as follows: "You never forbade him then?"  The answer: "I never did; I was never asked anything about it, then how could I forbid it?"  It is shown that many thousand dollars had before this time

been devoted to the business of the firm by Mr. Middleton, and that no demand was made for its return. It is also shown that when it was necessary to execute an assignment or power of attorney to transfer her securities, she executed the assignment or power in the usual form. Middleton says: "I took them (these securities) out of my pocket and asked her to sign them, and she did so." He testifies that he did not make his wife any promise to repay her the sums of money used in the business of the firm, and that the firm did not give her any promissory note, or written obligation, for the repayment of the money, nor did the firm pay her any interest for its use. We consider it abundantly clear that Mr. Middleton had good reason to know when he used his wife's money in the business of his firm, that she would acquiesce in whatever use he chose to make of it for his benefit; and furthermore that she has acquiesced in it. She is very far from finding fault with his conduct or arraigning it in any way. It is settled upon the soundest reasons that if a man uses the money of his wife with her acquiescence, she does not acquire a claim against him, or his estate, unless at the time of receiving or using the money, he made her an express promise to repay it. She cannot become a creditor under these circumstances, by reason of the fact alone that her husband has received the benefit of her money. There must be an express and specific promise to repay her. It is useless to agitate this question, because it is the settled law of the Court; not to speak of former decisions, it has been recently declared in *Grover & Baker's Sewing Machine Company vs. Radcliff*, 63 *Md.*, 496 and *Farmers & Merchants' Nat'l. Bank vs. Jenkins*, 65 *Md.*, 245. It is in vain to argue that Middleton loaned the money to himself, or to himself and his partner jointly. He could not become a sole debtor, or a joint debtor, to his wife without an express promise.

We must reverse the order overruling the exceptions; and sustain the second exception, which maintains that

Mrs. Middleton is not a creditor of the firm of J. I. Middleton & Co. This ruling disposes of the whole case, and the other exceptions may be considered as overruled.

> *Order reversed as to second exception, and cause remanded—costs in both Courts to be paid by the appellee.*

(Decided 15th March, 1888.)