# HENRY SCHNEIDER *v.* ARMAND MENAQUALE

## [No. 12, October Term, 1946.]

*Decided October 31, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Albert B. Mosebach* for the appellant.

*Henry L. Constable* for the appellee.

COLLINS, J., delivered the opinion of the Court.

Armand Menaquale, a building contractor, appellee, on February 5, 1945, filed in the Circuit Court for Cecil County a bill of complaint to enforce a mechanic's lien in the amount of $1,653.63 for balance claimed to be due on work and material in building a dwelling house for the appellant, Henry Schneider, who is blind and the owner of the tract of land on which the building was erected, and who contracted with the appellee for the erection of the dwelling house. Testimony on bill and answer was taken before Judge Albert Constable on June 21, 1945. Shortly thereafter Judge Constable be-

came ill and died before deciding the case. On February 9, 1946, Judge Floyd J. Kintner was appointed to fill the vacancy caused by the death of Judge Constable and by agreement of counsel the testimony was submitted to Judge Kintner. On March 1, 1946, he filed a decree directing the appellant to pay, as a result of this lien, the sum of $1,036.69. From that decree the appellant appeals.

As the chancellor, who decided the case, did not see and hear the witnesses, the rule that his finding will not be disturbed unless the evidence clearly demonstrates error, does not apply here. However, in every appeal to a court of superior jurisdiction, it is necessary for the appellant to point out that the trial court erred. *Jacobs v. Jacobs,* 170 Md. 405, 413, 185 A. 109. The appellant here contests the allowances made by the chancellor on ten items.

Item 1. Appellee charged appellant 20 per cent. of the purchase price of all materials purchased in Wilmington, Delaware, as a hauling charge. Testimony shows that appellant originally intended to buy his materials at Denton, Maryland, and at the suggestion of appellee the material was purchased in Wilmington. Appellant testified that appellee said, if the material was purchased in Wilmington, that it could be hauled to appellee's garage there and appellant would not be charged anything for hauling. Some of it was hauled to the building location by appellee and part was delivered by others. From the evidence it appears that appellant did not agree to pay appellee any hauling charge and further that appellee was allowed a 2 per cent. discount by the Wilmington Sash and Door Company where most of the material was purchased. The chancellor did not allow the 20 per cent. claimed by appellee but did allow him 10 per cent. of the cost of materials purchased or $121.98. As the appellant did not agree to pay a hauling charge, this Court feels that the amount of $121.98 should not be allowed the appellee and it is therefore stricken from the account.

Item 2. The appellee contracted to put monotile on the side walls of the bathroom and kitchen. Some of

this fell off and pulled away from the walls at the top and bottom. The appellant asked for a credit of $189 to put this in first class condition. The chancellor found the evidence conflicting and allowed the appellant $100 as a compromise. The appellee and one Burton C. Brown, the man who did the actual work, testified that appellant was told that on account of water in the cellar and dampness that the monotile should not be put on the walls until the dampness in the house was reduced because it would come off. Further that appellant told appellee to put it on immediately and that he would assume all responsibility for it, and if appellee did not put it on immediately, he would have someone else do it. Appellant denies that he ever assumed responsibility or was told that it should not be put on because the house was damp, but admits that he did telephone appellee and insisted that the monotile be put on the walls immediately and, if appellee did not do so, he would get someone else to do it. It is therefore evident that appellee did not want to put on monotile at that time and appellant insisted that he do so. There is no dispute that it would cost $189 to repair the monotile, therefore the allowance should be $189 or nothing for this item. This Court is of opinion that the weight of the evidence shows that appellant assumed responsibility for the immediate placing of the monotile. As the appellee has filed no cross-appeal, we do not feel called upon to disturb this award by the chancellor. *Harrison v. Robinette,* 167 Md. 73, 173 A. 60.

Item 3. The appellee contracted to build a center division wall in the cellar, one side to be used as a recreation room and the other as a utility room. When constructed the wall was 11 inches off center, making the recreation room approximately one foot smaller and the utility room approximately one foot larger. It is admitted that this was an error on the part of the appellee. Appellant claims that he should have a credit of $225 to correct this defect. From the testimony it does not appear that the mistake in the location of this wall has any effect on the structural stability of the house.

The chancellor allowed the appellant a credit of $100 for depreciation in the appearance of this cellar. We see no reason to disagree with this allowance.

Item 4. The appellant asks a credit of $100 to reconstruct the stairway or cellarway leading to the cellar. In building this cellarway the appellee shortened the length from the head of the steps to the wall of the house by one foot: The headroom in the entrance to the cellar is reduced from six feet six inches, as shown by the plans, to about six feet. Appellant admits that he granted appellee permission to narrow the entrance to the cellar but denies that he agreed to any change in the amount of headroom. There is no evidence that there was any difference in the cost of construction and this item was disallowed by the chancellor. According to the plans, appellant was to have headroom of six feet six inches at the entrance to the cellar. Without his permission the headroom has been reduced to six feet, and this makes a great difference to the appellant, who is a blind man. According to the testimony the cost of correcting this error in construction will be $100. We are of opinion that this allowance should be made to the appellant.

Item 5. The concrete foundation of the house was laid prior to the time appellee started work. The wall had been thrown out of plumb due to buckling of the forms when the concrete was poured. The appellee agreed to correct this wall with a shelf top to cover bulge. Appellant claims that the wall was not leveled off at the top of the front half and demanded a credit of $85 for this defect. A Mr. Jeffers, an architect called as a witness for the appellant, said that it would cost around $85 to put this shelf top on. Mr. Preston, who was employed as the architect for this house by the appellant, testified for appellee that this charge of $85 was excessive. The chancellor allowed a credit of $40 for this item and we see no reason to disagree with this finding.

Item 6. The original plan and contract between the parties called for the installation of four concrete areaways on the outside of the building to allow access to

the cellar windows. By agreement of the parties the contract was changed, raising the foundation walls of the house one foot and thus eliminating the need of areaways. The cost of bricks and labor in raising this wall one foot was $93.50 which was charged to appellant. There was testimony that it would have cost about $46.50 to build forms and pour concrete for the areaways, which was supposed to have been done and figured on in the original plans and contract by the appellee. The appellant claimed an allowance for this item, which the chancellor disallowed. We think that the appellant should be allowed this item of $46.50.

Item 7. After the completion of construction the front door did not fit. The appellant claimed a credit of $32 for this defect. Mr. Preston, the architect employed by the appellant, but who testified for the appellee, said this could be corrected by weatherstripping. However, there is no testimony as to the cost of the weatherstripping. Mr. Jeffers, the architect who testified for the appellant, said that weatherstripping would not sufficiently remedy the condition and thought that a new door should be furnished. The cost would be $32 for the door, hanging and painting. The chancellor disallowed this item. As the door was defective and there is no testimony as to the cost of the weatherstripping, we are of opinion that appellant should be allowed a credit of $32 for this item.

Item 8. The plans for the house contemplated wooden gutters. These could not be obtained and appellant provided metal gutters. The appellee refused to paint or hang these but put on a wooden cornice in place of the gutters. There is no testimony that appellant agreed to the substitution of the cornice for the wooden gutters, although Mr. Preston testified that appellant said he was willing to forget it. Appellant, however, is now claiming this credit of $25 which was disallowed by the chancellor. Mr. Preston said that as far as labor was concerned it would require as much labor to hang the wooden gutters as the metal ones. As no gutters were

hung and the hanging of gutters was contemplated by the agreement and the house is without gutters, we are of opinion that appellant should be allowed a credit of $25 for this item, as it would have cost about that amount to hang the wooden gutters.

Item 9. Appellant claimed a credit of $50 for refinishing doors and repairs to the floors, which were said to have been defectively laid. There was some evidence to support this claim, but the chancellor thought that the amount of $50 was excessive and allowed a credit of $25 for that item. We see no reason to disagree with this finding.

Item 10. The appellant claims to have paid appellee $121 in cash for a boiler which appellee says he did not pay. A boy, who lived with the appellant, testified that appellee told appellant in his presence that the boiler would cost $121 and he saw appellant give appellee some money at that time, but did not see it counted. The testimony shows that appellant was in the habit of taking receipts for all cash payments made, but did not take a receipt for this alleged payment. As the burden of proof was on the appellant to prove payment of this $121, we see no reason to disagree with the disallowance of this item by the chancellor.

For the reasons herein given this Court is of opinion that the amount of the decree in favor of the appellee should be reversed and reduced by the allowance to the appellant of Item 1 in the amount of $121.98; Item 4 in the amount of $100; Item 6 in the amount of $46.50; Item 7 in the amount of $32; and Item 8 in the amount of $25; making a total reduction from the decree, in the amount of $1,036.69, of $325.48. Thereby the decree should be entered for the appellee in the amount of $711.21.

*Decree reversed and case remanded for entry of a decree in the amount of $711.21 in favor of the appellee. Costs below to be paid by the appellant. Costs in this Court to be paid by the appellee.*