**Morris LIPSITZ, and Morris Lipsitz and Helen Lipsitz, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 6934.

United States Court of Appeals Fourth Circuit.

Argued March 7, 1955.

Decided April 12, 1955.

Llewellyn A. Luce, Washington, D. C. (Walter H. Maloney, Washington, D. C., on brief), for petitioners.

Robert B. Ross, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty Gen., Ellis N. Slack and Robert N. Anderson, Sp. Assts. to the Atty. Gen., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

These are appeals from judgments of the Tax Court of the United States against Morris Lipsitz (hereinafter called Lipsitz) individually for the years 1938, 1939, 1940, 1941 and 1944, and against Lipsitz and his wife, Helen Lipsitz, for the years 1942 and 1943. The Tax Court, 21 T.C. 917 found deficiencies in tax for each of these years and also assessed fifty percent fraud penalties for each year.

Lipsitz and Helen Lipsitz have appealed to us and have raised two main questions. First, did the Tax Court erroneously attribute income to Lipsitz that arose from property owned by him and his wife as tenants by the entirety? Second, was there error in the Tax Court's findings of fact as to the value of certain assets sold by Lipsitz in 1941? Since we think the Tax Court correctly ruled on these and all other points raised by these appeals, its decision must be affirmed.

This case was presented by the Commissioner on a net worth basis since Lipsitz had no proper records or books. The evidence and exhibits are quite voluminous and we will not detail them here except as relevant to the particular questions raised. The record before us shows that during the years 1938 through 1944 Lipsitz and his wife owned a substantial amount of property as tenants by the entirety. In determining deficiencies against Lipsitz for the years in which he filed individual returns, the Tax Court treated all income earned on assets owned by Lipsitz and his wife as being taxable to Lipsitz. Lipsitz now contends that he should have been taxed upon only half the income from property owned by him and his wife as tenants by the entirety.

■■ It is well settled that the measure of title, and the rights thereto incident, in property held by husband and wife under a tenancy by the entirety, are to be determined here by the law of Maryland. And under that law, each spouse, husband and wife, is ordinarily entitled each to one-half of the income from such property. Masterman v. Masterman, 129 Md. 167, 98 A. 537. In Saulsbury v. Commissioner, 27 B.T.A. 744, the head-note reads:

"The petitioner and his wife, residents of Maryland, owned personal property as tenants by the entirety. *Held* that *in the absence of an agreement between them for the distribution of the earnings on a contrary basis,* the husband is taxable on one-half of the income from such property." (Emphasis added.)

It was also stated in the opinion: "It does not appear, and it is not claimed, that such an agreement was ever entered into." In Brell v. Brell, 143 Md. 443, 122 A. 635, it was held that where proceeds from a farm owned by husband and wife were paid to the husband, with the acquiescence of the wife, who likewise acquiesced in the application of the proceeds to a debt due one of her sons and the payment of their living expenses, in the absence of an express promise by the husband to repay the amount paid to the son and for living expenses, there is no implied obligation on his part to do so. See, also, Jenkins v. Middleton, 68 Md. 540, 13 A. 155; Farmers & Merchants National Bank v. Jenkins, 65 Md. 245, 3 A. 302.

■ We think here there was a clear agreement between husband and wife, followed by a long continued practice,

that the income from these properties held under a tenancy by the entirety, should be considered in all respects as the income of the husband. He completely controlled the properties, made all decisions as to the purchase and sale of the properties. Indeed, Mrs. Lipsitz had so little connection with these properties that she failed to appear at the lengthy trial before the Tax Court. In reality, it was the husband who actually earned this income. There is nothing in the record to indicate that Mrs. Lipsitz either paid any commission to her husband for her share of the rentals collected or compensated him for his labor, materials and business acumen in the premises.

Further, Lipsitz again and again testified that he considered this income as his own. For example, in response to a question, he stated: "It didn't belong to me, it belonged to my wife. *It is mine just the same.*" (Italics ours.) In colloquy between counsel for Lipsitz and the Court this interchange occurred:

"The Court: Now do I understand both parties to agree that the assets of both these Petitioners may be considered together?"

"Mr. Luce: Yes, your Honor; and it is the way the net worth statements have been set up."

■ In the light of all these circumstances, we find no reversible error in the action of the Tax Court, which treated the income from the properties held by Lipsitz and his wife under a tenancy by the entirety, as the income of Lipsitz alone.

■ We now turn to the second error alleged by Lipsitz. In 1933 Lipsitz and Louis Shane organized the Warner Ice Corporation, with each of them owning one half of the capital stock. This corporation functioned until June, 1937, when Lipsitz and Shane had a disagreement which culminated in the purchase of Shane's half interest in the corporation by Lipsitz who then became the sole stockholder. He immediately dissolved the corporation, transferring all of its assets to himself and his wife.

Lipsitz continued in the ice business as the Warner Ice Company until 1941, at which time he sold his entire interest in the business, including the assets acquired on dissolution of the Warner Ice Corporation, to the Merchants Terminal Corporation for $57,500. Lipsitz reported no income from the sale of these assets, contending that he had suffered a capital loss. The Tax Court found, however, that there had been a capital gain of $17,357.49 from the sale of this property. Although Lipsitz contends that this finding is erroneous, we think that the record before us amply supports the Tax Court.

The difference of opinion arose over the computation of a basis for the calculation of gain or loss from the sale of the assets in 1941. Lipsitz contended that this basis was $108,951.76, resulting in a capital loss. The Tax Court found, however, that the basis of these assets actually was only $40,142.51. We think that this finding has ample support in the record.

■ The greater portion of the property sold by Lipsitz in 1941 was acquired by him from dissolution of the Warner Ice Corporation in 1937. This dissolution was a taxable transfer, and the property acquired by Lipsitz would take as its basis its fair market value at the time of the dissolution. The Tax Court found this value to be $36,000. Since this value has great relevancy in determining the basis of the property sold in 1941, a great deal of evidence was entered concerning fair market value of this property in 1937.

■ Lipsitz had purchased Shane's half-interest in this property immediately prior to dissolution of the Warner Ice Corporation in 1937. He transferred certain property to Shane for the purchase price. The Tax Court found that this property, land, buildings and machinery, had a value of $22,300. Lipsitz contends that this figure does not include the expense of improvements made by him on the property. This is not true; the Tax Court credited Lipsitz with these improvements but did not

accept his figures as to their cost, which figures were based on the cost of such improvements if made by a contractor.

The record shows that these improvements were made by Lipsitz, aided by his son and using materials obtained at wholesale prices. In view of this, the Tax Court's finding was quite proper. Also, Lipsitz included in his valuation of the property transferred to Shane a $6,800. item for machinery and equipment. This is not proper, as the Tax Court held, since the record shows that this equipment was originally purchased by Shane and, therefore, could not be considered as any part of the consideration paid to Shane. In the light of this finding as to the cost of a half-interest in the assets purchased in 1937, and in view of other evidence in the record, the Tax Court was quite correct in finding that the property received in 1937 from the Warner Ice Corporation had a fair market value of $36,000.

In addition to these assets bought from the Warner Ice Corporation, Lipsitz in 1941 sold other properties to Merchants Terminal Corporation which he had purchased for his ice business between 1937 and 1941. The Tax Court's valuation of these assets is supported by the record. One item bears mentioning, however, Lipsitz contends that the value of certain property located at 423–425 West Cross Street should have been included, in addition to the value of the Warner Ice Corporation's property, in the valuation of property purchased by Merchants Terminal Corporation. The record shows, though, that this property was deeded to the Warner Ice Corporation by Lipsitz in March, 1933, and, therefore, was included in the $36,000. valuation of assets received from the Warner Ice Corporation by Lipsitz in 1937.

■ The Tax Court accepted Lipsitz's evidence as to the purchase of other assets between 1937 and 1941, which were transferred in 1941, but reduced his valuation of these assets. In view of the record before us, we feel that the Tax Court was correct in its findings. Cases of this nature are always difficult.

The taxpayer has kept no accurate records, and as a consequence the valuation of property bought or sold many years previously is quite difficult. Where there is evidence to support its findings, we cannot say the Tax Court erred in assigning a particular value, merely because the taxpayer says that value is incorrect. It may be of some consolation to the taxpayer if he realizes that a properly kept set of books could have helped immeasurably.

■ Lipsitz further contends that there was no proof of fraud on his part. We think there was ample evidence of fraud before the Tax Court. Not only does the record show a consistent under-statement of income over a long period of years but it also shows that he purchased property under the fictitious names "Fred Jacobs," "Vernon Birk," and "Morton Lipps." Also, in 1942 Lipsitz and his wife purchased properties in the names of "Morton" and "Loraine Pilstiz." In 1942, 1943, 1944 and 1945 Lipsitz directed the filing of tax returns under the name of Pilstiz; his son signed the first three returns and his wife signed the 1945 return.

When questioned about these returns, Lipsitz told a story which he later admitted to be false. In many of his business transactions, he was shifty, cunning and evasive. The Tax Court found many of the customary badges of fraud and observed: "We are satified that he did not have scrupulous regard for the truth * * *. We do not believe his explanation that he had no cancelled checks or stubs." We think, reviewing all the evidence, that the Tax Court had before it ample proof of fraud.

■ Lipsitz also complains that the Tax Court did not credit him with $25,000 in cash as of December 31, 1940, which Lipsitz testified he had in a vault. The Tax Court is not required to believe the uncorroborated story of the taxpayer and was quite correct in refusing to credit this testimony here, since Lipsitz had made a prior inconsistent statement that the cash had been dissipated, which he failed to explain.

The other points raised by Lipsitz are not worthy of extensive treatment here. Suffice it to say that none of these points, all dealing with findings of fact by the Tax Court, has any merit.

For the reasons stated above, the decisions of the Tax Court are affirmed.

Affirmed.