Victor C. Lauria and Mary C. Lauria v. Commissioner.Lauria v. CommissionerDocket No. 6807-65.United States Tax CourtT.C. Memo 1967-184; 1967 Tax Ct. Memo LEXIS 75; 26 T.C.M. (CCH) 906; T.C.M. (RIA) 67184; September 22, 1967*75 Victor C. Lauria, pro se, 516 Park Rd., Wyomissing, Pa. Giles J. McCarthy, for the respondent. DAWSONMemorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined that the petitioners are liable for the following income tax deficiencies and additions to tax: Additions to TaxSec. 293(b)Sec. 6653(b)YearDeficiencyI.R.C. 1939I.R.C. 19541946$1,080.78$ 540.391947845.20422.601948416.22208.111949267.82133.9119501,381.56690.781951718.51359.2619523,944.601,972.3019541,352.01676.001955395.82$ 197.9119563,257.121,628.5619571,695.31847.6619582,576.951,288.4819593,093.511,546.7619602,175.821,087.9119612,006.511,003.26Two issues are presented for decision: 1. Are petitioners liable for income tax deficiencies determined by respondent on the net worth method of reconstructing income? 2. Was any part of the deficiencies in income tax determined for the years in question due to fraud with intent to evade tax so as to make the petitioners liable for the additions to tax under section 293(b), Internal Revenue Code*76 of 1939, or section 6653(b), Internal Revenue Code of 1954? The only ground alleged by petitioners in their petition for seeking a redetermination of the deficiencies and additions to tax is that "respondent did not take into consideration in setting up a net worth for petitioners the question of inheritances and gifts which can be substantiated by the taxpayers and can be allowed." On January 25, 1966, respondent filed his answer to the petition. The answer contains specific facts upon which respondent relies to sustain fraud in respect of which the burden of proof is placed on him by statute. On April 8, 1966, respondent filed, pursuant to Rule 18 of the Court's Rules of Practice, a motion that the undenied affirmative allegations in his answer be deemed admitted. No reply was filed by petitioners. On May 25, 1966, this Court granted respondent's motion and ordered that the undenied affirmative allegations in the answer be deemed admitted. Findings of Fact Many of the facts have been stipulated by the parties and are incorporated herein by this reference. In addition, all undenied affirmative allegations contained in respondent's answer are established*77 as facts in this case. Victor C. Lauria and Mary C. Lauria (herein called petitioners) are husband and wife whose legal residence at the time they filed their petition in this proceeding was Wyomissing, Pennsylvania. They filed their joint Federal income tax returns for the years 1946 through 1951 with the collector of internal revenue for the first district of Pennsylvania at Philadelphia. For the years 1952 through 1961 they filed their Federal income tax returns with the district director of internal revenue at Philadelphia. Victor was born in Marsiconnovo, Italy, on June 1, 1910, the son of John (Giannario) Lauria and Domenica Lauria. He has one sister, Rose, and three brothers, Saverio, Henry, and Amerigo. Victor entered the United States in 1926 accompanied by his mother, Domenica, and his younger brother, Henry. Victor attended 6 years of school in Italy, but never attended school in the United States. While in Italy he began working at age 5 as a shoe repairman. Victor's father was employed by the American Chain and Cable Company at Reading, Pennsylvania, as follows: Period of EmploymentJob TitleApril 3, 1923 - January 10, 1925Moulder HelperJuly 6, 1925 - February 19, 1926Night Foundry ForemanMay 22, 1926 - October 14, 1927Moulder FitterOctober 14, 1927 - April 1, 1928Sub ForemanApril 1, 1928 - January 11, 1930Moulder Fitter*78 The starting rate of the father's pay with American Chain and Cable Company on May 22, 1926, was 50 cents per hour. He was discharged as Night Foundry Foreman on February 19, 1926, because of inefficiency. Subsequent to his arrival in the United States, Victor resided with his parents at 411 Gordon Street, Reading, Pennsylvania. Victor worked as a baker's helper in Reading, for the gas company and in a shoe repair shop located at 10 North Fourth Street in Reading. In March 1930, Victor purchased from Joseph Glaser the operating business, fixtures, machinery and inventory of the shoe repair shop located at 10 North Fourth Street, Reading, Pennsylvania, for the purchase price of $750. Subsequently, Victor purchased a new Stitcher and Finisher for the shoe repair shop from Landis Machine Company for the purchase price of $1,175 and on October 27, 1941, paid the final installment due on said purchase of $521.25. Since March 1930, Victor has continuously operated the shoe repair shop as a sole proprietor. On June 2, 1934, Victor married Mary in Elkton, Maryland. Mary was the daughter of Nicola Marconi. Of the marriage of Victor and Mary, the following children were born: NameDate of BirthTheresa DomenicaFeb. 10, 1935Victor JohnJune 2, 1936Carol AnnFeb. 22, 1945*79 Petitioners claimed Victor's father as a dependent in their joint Federal income tax returns for the years 1941 through 1945. Victor's father died intestate on May 10, 1946. Victor was appointed Administrator of his estate on May 24, 1946, by the Orphans Court of Berks County, Pennsylvania. The estate was distributed in equal shares to the five surviving children, as follows: DistributableNameShareSamuel S. Lauria$ 387.99Rose Catalano387.99Amerigo Lauria387.99Victor C. Lauria388.00Henry C. Lauria388.00Total$1,939.97During the years 1941 through 1944 Mary was employed as a seamstress with the David Cuptal Dress Shop in Reading, Pennsylvania. Her wages during the years 1941 through 1944 were as follows: YearWages1941$1,243.7619421,481.7819431,778.151944747.60 Mary has not been employed since the end of 1944. On July 11, 1950, Nicola Marconi, the father of Mary, died testate, leaving all his property to Mary. She was named Executrix of his will and appointed on July 21, 1950. The appraisal of her father's estate, of which she was sole legatee, listed the whole thereof as follows: Real Estate:NonePersonal Property: Checking Account, City Bank andTrust Co., Reading, Penna.$ 700.47Savings Account, Berks County TrustCo., Reading, Penna.501.00U.S. Savings Bonds178.00Total Estate (including SavingsBonds held jointly by decedent andMary)$1,379.47*80 For the purpose of obtaining loans, Victor submitted during the period from 1947 to 1961 statements to the Berks County Trust Company of Reading, Pennsylvania, listing as cash on hand and net worth the following amounts: Date ofFinancialCash onStatementHandNet WorthApr. 12, 1947$ 44,650.00Mar. 16, 194847,650.00Mar. 19, 1949$400.0070,550.00June 1, 1950300.0092,200.00Mar. 6, 1952500.0096,000.00Nov. 5, 1953500.0078,750.00Oct. 24, 1954107,300.00Oct. 8, 1957$132,000.00Jan. 3, 1961176,500.00During the years 1941 through 1961 the petitioners reported the following adjusted gross income and tax liability: Adjusted GrossYearIncomeTax Liability1941 *$2,646.3601942 *2,683.78$ 47.221943 *3,386.3566.381944 *2,613.6033.571945 *2,815.0059.0619462,797.942.0019472,094.03019483,343.21019492,588.36019502,138.94019513,159.8063.89 ($63.89 self-employment tax)19521,923.9943.04 ( 43.04 self-employment tax)1953 *2,930.84226.00 ( 39.00 self-employment tax)19543,050.6525.51 ( 25.51 self-employment tax)19553,011.0777.18 ( 15.19 self-employment tax)19561,245.3738.05 ( 38.05 self-employment tax)1957(495.41)47.41 ( 47.41 self-employment tax)19581,111.9129.04 ( 29.04 self-employment tax)19594,243.94454.69 ( 53.69 self-employment tax)19604,414.79534.71 ( 97.71 self-employment tax)19619,962.901,566.63 ( 69.98 self-employment tax)*81 On February 4, 1947, petitioners purchased from Rosario Torchia 66 acres of land in Cumru Township, Berks County, Pennsylvania, for $3,600. In September 1956, they purchased an adjoining tract of land comprising 10 acres from William A. and Elizabeth Brindle for $225. In their joint Federal income tax returns for the years 1948 to 1958, inclusive, petitioners reported the following rental income and expenses from their farm property in Cumru Township: RentalYearIncomeExpenses1948$150.00$294.09 (taxes, interest, in-surance)1949180.0055.001950180.0095.00 (taxes, insurance)1951180.00190.40 (taxes, insurance,roof, misc.)1952180.00193.02 (taxes, insurance, re-pairs)1953220.00319.50 (taxes, insurance, re-pairs)1954300.00301.76 (taxes, insurance, re-pairs)1955300.00190.19 (taxes, insurance)1956275.00268.98 (taxes, insurance, up-keep)1957200.00388.09 (taxes, insurance, up-keep)1958130.00188.00 (taxes, insurance)From the property in Cumru Township the petitioners made the following sales: DatePurchaseof saleGranteePrice11-27-48Jacob W. Lorah$1,000.004-12-49Katie V. Smith1,000.0010- 9-50James W. Swanger300.002-16-52James W. Swanger300.009-21-55Edgar T. Krick, Jr.300.008-21-56James W. Swanger300.009-28-56Edward Emmers, III2,500.006-16-59Edward Emmers, III andIvan C. Yoder9,300.008- 4-59Edgar T. Krick, Jr.500.00*82 Petitioners did not report in their Federal income tax returns the following sales of properties in Cumru Township: YearGranteeSales Price1949Katie V. Smith$1,000.001950James W. Swanger300.001952James W. Swanger300.001955Edgar T. Krick, Jr.300.001956Edward Emmers, III300.001959Edgar T. Krick, Jr.500.00In their 1959 Federal income tax return the petitioners understated the sales price and overstated the sales expenses of property located in Cumru Township and sold to Edward Emmers, III and Ivan C. Yoder in June 1959. During the years 1939 through 1961 the petitioners obtained the following loans or mortgages: Date ofType ofDate PaidBorrowingNoteObtained fromAmountor Satisfied6-24-39MortgageClara A. Rahn$ 1,500.0010- 7-3910- 7-39MortgageBerks County Tr. Co.3,000.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-24-40InstallmentBerks County Tr. Co.200.0010-14-41UnknownPersonalBerks County Tr. Co.205.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-23-42DiscountBerks County Tr. Co.500.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- 4-42DiscountBerks County Tr. Co.500.001-24-432-18-43DiscountBerks County Tr. Co.500.008-23-432-24-43MortgagePeoples Trust Co.4,844.375-27-445-29-43DiscountBerks County Tr. Co.300.008-23-435-29-43MortgageBerks County Tr. Co.2,300.009-16-431-29-45PrivateEvelyn N. Lauria5,000.005- 2-464- 6-46MortgageThe Reading Trust Co.13,000.0010-20-487- 3-46PrivateJoseph F. Glaser8,250.006- 7-504-12-47CommercialBerks County Tr. Co.6,000.001- 8-488- 7-47CommercialBerks County Tr. Co.1,500.006- 8-489-10-47CommercialBerks County Tr. Co.1,250.0012-31-483-16-48CommercialBerks County Tr. Co.1,000.003- 7-4910-20-48CommercialBerks County Tr. Co.4,000.0011-29-4911-15-48CommercialBerks County Tr. Co.1,600.0012- 6-4811-16-48MortgageThe Reading Trust Co.16,000.0012- 2-526- 5-50CommercialBerks County Tr. Co.5,000.0010-23-501951PrivateJoseph F. Glaser3,000.008-13-532-19-51CommercialBerks County Tr. Co.2,000.002-26-515-10-51CommercialBerks County Tr. Co.1,000.006-11-513- 6-52CommercialBerks County Tr. Co.3,500.0012- 1-528- 5-53CommercialBerks County Tr. Co.2,500.005- 3-5411- 5-53PrivateJoseph F. Glaser5,000.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-13-54CommercialBerks County Tr. Co.300.0011- 8-5411-22-54CommercialBerks County Tr. Co.8,000.005-21-561-18-55CommercialBerks County Tr. Co.400.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-10-55PrivateMary T. Glaser3,300.007- 2-625-28-56CommercialBerks County Tr. Co.9,000.0010- 3-576-25-56CommercialBerks County Tr. Co.9,000.001- 6-587- 3-56MortgageRobert E. Deppen30,000.001- 6-581- 6-58CommercialBerks County Tr. Co.34,000.0011-28-601- 3-61CommercialBerks County Tr. Co.22,000.007- 2-62*83 With the exception of cash on hand, the parties have stipulated the net worth of petitioners for the years 1946 through 1961. The stipulated statement shows the following increases in net worth: Increase in Net Worth(Understatement ofDateTaxable Income)12-31-46$ 5,355.0312-31-475,097.0612-31-482,776.0412-31-492,557.6612-31-509,285.3812-31-513,993.7612-31-5216,048.4912-31-5312-31-546,431.7512-31-551,869.4512-31-5615,651.8512-31-5711,536.1612-31-5812,704.3912-31-5912,716.7412-31-609,518.0312-31-616,960.90Petitioners had cash on hand as follows: DateCash on Hand1- 1-46$7,202.6012-31-46500.0012-31-47500.0012-31-48500.0012-31-49$ 500.0012-31-50500.0012-31-51500.0012-31-52500.0012-31-53500.0012-31-54500.0012-31-55500.0012-31-56500.0012-31-57500.0012-31-58500.0012-31-59500.0012-31-60500.0012-31-61500.00Petitioners filed false and fraudulent income tax returns for each of the years 1946 through 1952 and 1954 through 1961 with intent to evade tax, and part of the resulting deficiency or underpayment of tax in each*84 year was due to fraud with intent to evade tax. Opinion In view of the admitted failure of petitioners to maintain adequate books and records of their income-producing activities, the deficiencies here determined by respondent were calculated by using the net worth method of reconstructing income. Holland v. United States, 348 U.S. 121 (1954); Lipsitz v. Commissioner, 220 F. 2d 871 (C.A. 4, 1955), affirming 21 T.C. 917 (1954). The only attack made by petitioners on the stipulated net worth statement is that respondent erred in determining the amount of cash on hand as of January 1, 1946, and as of December 31 of each of the years in controversy. The only offer of proof in this regard is Victor's vague, inconclusive and uncorroborated testimony. In short, there is no competent evidence of any gifts, savings or inheritances except for the stipulated inheritance of $388 Victor received in 1946 from his father's estate and the $1,379.47 which Mary received from her father's estate in 1950. The petitioners have completely failed to meet their burden of proving error in respondent's determination of cash on hand. Respondent must establish the*85 requisite fraud by clear and convincing evidence to support the 50-percent additions to tax under section 293(b) of the 1939 Code and section 6653(b) of the 1954 Code. Arlette Coat Co., 14 T.C. 751 (1950); Luerana Pigman, 31 T.C. 356, 370 (1958). We think he has successfully carried that burden of proof. Respondent is not required to prove that the entire amount determined by him to have been received by the petitioners was tainted by fraud. The statute and the decided cases establish that if a part of the deficiency or underpayment is due to fraud the addition to tax attaches to the entire deficiency. Arlette Coat Co., supra. The fraud mentioned in the 1939 and 1954 Code provisions is "actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner, 118 F. 2d 308, 310 (C.A. 5, 1941); Tomlinson v. Lefkowitz, 334 F. 2d 262, 265 (C.A. 5, 1964), certiorari denied 379 U.S. 962 (1965). And it is now well established that in a tax fraud case "consistent failure to report substantial amounts of income over a number of years, standing*86 alone, is effective evidence of fraudulent intent." Schwarzkopf v. Commissioner, 246 F. 2d 731, 734 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court; Holland v. United States, supra; and Kurnick v. Commissioner, 232 F. 2d 678 (C.A. 6, 1956). In addition to the prima facie proof of fraud resulting from the undenied allegations contained in respondent's answer, Robert Kenneth Black, 19 T.C. 474 (1952), and Louis Morris, 30 T.C. 928 (1958), there is other clear and convincing evidence of fraud. The financial statements filed by petitioners with lending institutions showed little, if any, cash on hand and a net worth increase of $121,850 from 1947 to 1961. Friedberg v. United States, 348 U.S. 142 (1954), and Gatling v. Commissioner, 286 F. 2d 139 (C.A. 4, 1961), affirming a Memorandum Opinion of this Court. The income tax returns filed by petitioners for the 5 years immediately preceding 1946 reflected average yearly adjusted gross income of about $2,829. This is not consistent with any rapid increase in wealth prior to 1946 or with contentions of family wealth when petitioners claimed*87 Victor's father as a dependent in all 5 years. See Schuermann v. United States, 174 F. 2d 397 (C.A. 8, 1949), certiorari denied 338 U.S. 831 (1949). Petitioners also failed to report six separate sales of real estate in the years 1949 to 1959 and understated sales expenses on the sale of realty in 1959. And, finally, Victor's refusal to state the amount of his accumulated cash prior to and during the years in issue demonstrates his "disingenuous avoidance of accurate knowledge" when the need for such knowledge was apparent. This in itself is an indication of fraud. Cirillo v. Commissioner, 314 F. 2d 478, 482 (C.A. 3, 1963). Respondent's determination of the amount of petitioners' income and the existence of deficiencies are prima facie correct. Even in a fraud case, where the burden of proving fraud is on the Commissioner, the taxpayer still retains the burden of proving error in the determination of the amount of deficiency. Jacob D. Farber, 43 T.C. 407, 428 (1965); Max Cohen, 9 T.C. 1156 (1947), affd. 176 F. 2d 394 (C.A. 10, 1949). The petitioners have failed to do this. Consequently, we sustain the*88 deficiencies and additions to tax for all years. Decision will be entered for the respondent. Footnotes*. Years not in issue.↩