William L. Thomas and Irene Thomas v. Commissioner.
Thomas v. Commissioner
Docket No. 92919.
United States Tax Court
T.C. Memo 1964-24; 1964 Tax Ct. Memo LEXIS 311; 23 T.C.M. (CCH) 117; T.C.M. (RIA) 64024; January 31, 1964
William L. Thomas, pro se, RFD # 1, Delta, Ohio. Thomas J. Young, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and additions to the tax for the years 1954, 1955, and 1956 as follows: Addition to tax
Addition to tax
under Sec.
under Sec.
6653(b)
294(d)(2)
I.R.C.
I.R.C.
Year
Deficiency
1954
1939
1954
$ 2,013.36
$1,006.68
$123.92
1955
688.57
344.29
None
1956
14,470.86
7,235.43
None
Totals
$17,172.79
$8,586.40
$123.92
At the conclusion of the trial, respondent's motion to amend his answer to conform with the proof contained in the stipulation of facts filed at the trial was granted. By amended answer *312 pursuant to that motion respondent claims deficiencies and additions to tax as follows: Addition to tax
Addition to tax
under Sec.
under Sec.
6653(b)
294(d)(2)
I.R.C.
I.R.C.
Year
Deficiency
1954
1939
1954
$ 1,478.88
$ 739.44
$91.85
1955
957.31
478.66
1956
12,489.63
6,244.92
Total
$14,925.82
$7,463.02
$91.85
The issues for decision are whether respondent properly determined the deficiencies using a net worth and expenditures computation and whether any part of the deficiencies is due to fraud. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, William L. and Irene Thomas, husband and wife residing in Delta, Ohio, filed joint income tax returns on the cash method of accounting with the district director of internal revenue at Toledo, Ohio, for the calendar years 1954, 1955, and 1956. William L. Thomas (hereinafter referred to as petitioner) during the years in issue was a Christian Science practitioner. As such, he maintained an office in Toledo, Ohio, and had a clientele of patients. Petitioner never billed his patients for the services he rendered but left it to each *313 patient to make such payment as he or she felt directed to make. Petitioners on their income tax returns reported gross receipts, business expenses, and net income from petitioner's Christian Science practice for the years 1954, 1955 and 1956 as follows: 1954
1955
1956
Gross receipts
$8,805.64
$11,533.19
$11,130.24
Less expenses
Rent
$ 638.00
$ 678.00
$ 692.00
Light
17.95
15.68
16.76
Telephone
389.28
452.63
568.28
Card in journal
12.00
12.00
Office
180.84
55.80
56.80
literature
Office supplies
91.07
31.52
95.02
Parking
144.00
144.00
Office expense
16.93
Travel
399.93
371.50
341.08
Welfare expense
241.17
292.78
406.82
Postage
108.66
130.22
166.72
Auto expense
1,150.30
1,236.38
1,463.96
Depreciation
216.22
199.34
195.93
3,462.35
3,619.85
4,147.37
Net income
$5,343.29
$ 7,913.34
$ 6,982.87
Petitioners had assets and liabilities for the years 1953, 1954, 1955, and 1956, and increases in net worth for the years 1954, 1955, and 1956 as follows: ASSETS
1953
1954
1955
1956
Cash on Hand
$ 300.00
$ 300.00
$ 300.00
$ 300.00
Toledo Trust Savings
88.24
89.12
90.02
90.92
811-15 Cully Road
3,250.00
3,115.00
3,040.00
2,965.00 [1]
842-44 Cully Road
10 Acres & Improvements
17,200.00
17,200.00
9,400.00
9,400.00 [1]
27 Acres Delta
16,000.00
16,000.00
16,000.00
16,000.00
4409 Douglas Road
6,300.00
15,300.00
Montana Ranch
22,000.00
Chattels
2,000.00
Business & Farm Equipment
2,875.12
2,768.90
2,748.41
3,512.48
1953 Ford
1,200.00
1,200.00
1,200.00
1,200.00
1952 Plymouth
1,000.00
Total Assets
$40,913.36
$40,673.02
$39,078.43
$73,768.40
LIABILITIES
Esther Southward
$26,000.00
$26,000.00
$26,000.00
$26,000.00
F. Shipman - 27 Acres
7,000.00
3,500.00
Peoples Savings - 4409
8,726.60
Douglas
Total Liabilities
$33,000.00
$29,500.00
$26,000.00
$34,726.60
Net Worth
7,913.36
11,173.02
13,078.43
39,041.80
Less: Beginning Net Worth
7,913.36
11,173.02
13,078.43
Increase in Net Worth
3,259.66
1,905.41
25,963.37
*314 The 27 acres of land in Delta, Ohio was purchased by petitioners in May 1953, from an individual named Shipman for $16,000. Petitioners paid $9,000 as a down payment. The balance of the payments was made to the Peoples' Savings Bank. The outstanding unpaid balances for December 31, 1953, December 31, 1954, and December 31, 1955, were $7,000, $3,500, and zero, respectively. The property located at 4409 Douglas Road, Toledo, Ohio was acquired by petitioners in 1955 and 1956. Petitioners paid Augusta Miller, the owner of the property and a patient of petitioner's, $6,300 on this property in 1955. Petitioners received a deed to this property on June 5, 1956, and mortgaged the property for $9,000 on June 6, 1955. The outstanding balance on the mortgage loan on December 31, 1956, was $8,726.60. In 1961 Augusta Miller instituted legal action against petitioner in the Court of Common Pleas of Lucas County, Ohio, charging generally that petitioner abused the Christian Science practitioner-patient *315 relationship that existed between them and in this manner acquired the Douglas Road property, as well as other of her assets, all without paying any consideration. Petitioner failed to enter an appearance, either in person or by attorney, to defend the action, and a default judgment was entered against him in the amount of $21,000. Petitioner arrived at the trial during the presentation of the testimony as to the assessment of damages, sat in the back of the courtroom, listened to the testimony without comment or objection, and upon announcement of the verdict left the courtroom. Shortly before the trial of this case petitioner had been in an accident. Petitioner has not taken an appeal from the judgment entered by the Lucas County Court. In 1956 Matie Baker, another of petitioner's patients, transferred property located at 219 Garland Place, Toledo, Ohio to petitioner without consideration. This transfer was made in order that petitioner might hold legal title to the property for Matie Baker's benefit to protect her from her relatives who wanted to place her in a resthome. In 1958 petitioner deeded the property back to Matie Baker without consideration. In the year 1956 petitioner *316 paid $20,000 cash as a down payment on a ranch in Sweet Grass County, Montana. Petitioner also paid $2,000 for various chattels and $1,500 was given to M. W. Petersen in caring for the ranch during 1956. At the end of 1956 petitioner's equity in the real estate was $22,000. During the years 1950, 1951, 1952, and 1953, petitioner borrowed a total of $26,000 from Esther Southward. None of this money was repaid to Esther Southward during the years 1954, 1955, or 1956. Petitioner made other expenditures during the years here in issue as follows: 1954
1955
1956
Contributions
$1,710.00
$2,400.00
$2,250.00
Interest
278.76
176.81
266.60
Real estate taxes
356.62
243.45
378.44
Personal property
taxes
20.48
43.55
51.19
Automobile license
10.00
10.00
10.00
Automobile collision
790.14
Sales tax
30.00
30.00
60.00
Toledo income tax
43.38
40.00
99.13
Federal income tax
19.42
51.94
448.40
Federal income tax- estimate
300.00
400.00
848.40
Interest on Montana Ranch
221.56
Food
500.00
500.00
500.00
Outside meals
50.00
50.00
50.00
Utilities
100.00
100.00
100.00
Automobile personal
$ 250.00
$ 250.00
$ 250.00
Vacations
300.00
300.00
600.00
Incidental purchases
1,000.00
1,000.00
1,000.00
Total
$5,758.80
$5,595.75
$7,133.72
*317 Petitioner made trips to Iowa and Yellowstone Park in 1954, and to Montana in 1955 and 1956. During the 1930's petitioner worked for the Delta Building and Loan Association and as a result of his employment there he was found guilty of a felony and spent a year in prison. For the years 1942 to 1947, he worked as an accountant for the Toledo Paper Box Company. In 1947 petitioner started his Christian Science practice and he continued his practice throughout the years in issue. Petitioner is not now registered in the Christian Science Journal as a Christian Science practitioner. In 1956 petitioner was dismissed from the First Church of Christ Scientist, Toledo, Ohio. In numerous interviews with agents of respondent, petitioner failed to disclose the fact that he owned the Douglas Road and Garland Place properties and the Montana ranch. When asked by these agents to list all his property, petitioner omitted mention of these assets. When respondent's agents apprised petitioner of the fact that they were aware of his ownership, first of the Douglas Road property, and, then of the Garland Place property, petitioner explained, in each instance, that his ownership of the property *318 had "slipped" his mind. Petitioner, at first not only failed to disclose to respondent's agents his ownership of the ranch in Montana but also denied ever having had business dealings in Montana with in individual named Petersen. Later, when confronted with the fact that respondent's agents knew of his ownership of the ranch, petitioner admitted ownership. Petersen was the broker who handled the sale of the ranch to petitioner. Petitioner explained that part of the funds used to purchase the ranch came from a $10,000 loan by Esther Southward which was in addition to the $16,000 loan made to petitioner by Esther Southward which petitioner had already disclosed to the agents, and that he had borrowed $15,500 from Hazel Rummel. Petitioner's only explanation for his failure to make full disclosure respecting the ranch was that he was "skeptical" of telling respondent's agents about it. Petitioners understated their taxable income in the amount of $2,761.38, zero, and $25,896.67 for the taxable years 1954, 1955, and 1956, respectively, computed as follows: 1954
1955
1956
Increase in Net Worth
$3,259.66
$1,905.41
$25,963.37
Add: Living Expenses
5,758.80
5,595.75
7,133.72
Corrected Adjusted Gross Income
$9,018.46
$7,501.16
$33,097.09
Reported Adjusted Gross Income
6,257.08
8,453.82
7,200.42
Understatement
$2,761.38
0
$25,896.67
*319 Respondent in his notice of deficiency determined petitioners' income for the years 1954, 1955, and 1956 on the basis of increases in net worth plus expenditures. Petitioners' books and records are inadequate to determine their correct tax liability. No part of the deficiency resulting from petitioners' understatement of income in their income tax return for 1954 is due to fraud. Part of the deficiency resulting from petitioners' understatement of income in their income tax return for 1956 is due to fraud. Opinion It is not clear whether petitioners object to respondent's use of the net worth plus expenditures method of computing their income for the years here involved or whether they merely contest certain items in respondent's computation. Petitioner appeared pro se, and neither at the trial nor in the paper he filed which was apparently intended to be his brief, was he ever clear with respect to his position in this case, except that he did contest certain items which respondent had included in the net worth statement. Petitioner did not produce his books and records at the trial even though respondent had served upon him a notice to produce. Petitioner's explanation *320 for his failure to produce his books and records was: * * * I could not do that in fairness to the people because of the abuse that it had been put to before and that they had had the books and hand-checked them thoroughly and not only for that period but for a period after that. Petitioner's records had been examined by one of respondent's agents. These records consisted of one book in the nature of a journal in which petitioner recorded receipts from and expenses of his Christian Science practice beginning with the year 1947. This book contained no information with respect to property purchases, loans, operations of a farm, or any other assets owned by petitioner. In view of petitioner's failure to produce his books and records at the trial and the fact that a computation of his income by the net worth method results in substantial understatements of income in two of the years here in issue, we hold that respondent did not err in computing petitioner's income by the net worth method. Cf. Harry Gleis, 24 T.C. 941, affd. 245 F. 2d 237 (C.A. 6, 1957); and Morris Lipsitz, 21 T.C. 917 (1954), affd. 220 F. 2d 871 (C.A. 4, 1955), *321 certiorari denied 350 U.S. 845. Petitioners either stipulate or do not contest the accuracy of most of the assets listed by respondent in his determination of their net worth as set forth in the notice of deficiency. Respondent's computation of expenses was taken in most instances from the income tax returns filed by petitioners and is not contested by petitioners. In our findings of fact we have adopted the net worth figures used by respondent with certain adjustments which we consider to be supported by the evidence. Since no question of the statute of limitations has been raised petitioners, of course, have the burden of showing error in respondent's determination of deficiencies. Petitioners at the trial offered testimony of other witnesses which to some extent supported their contention that there were certain errors in respondent's determination of their net worth and expenditures. Petitioner, himself, testified with respect to certain of these items. Petitioner's testimony was confusing and in many instances not directed to the issues here involved. We do not consider his testimony worthy of belief except where supported by other evidence or by actions which tend *322 to corroborate his statements. Petitioner testified that the Garland Place property which respondent included in his net worth computation for 1956 was deeded to him in 1956 by the owner, Matie Baker, for him to hold for her to protect her from relatives who were seeking to place her in a resthome, and that subsequently he returned the property to Matie Baker also without consideration. The record shows that petitioner in fact did deed this property back to Matie Baker in 1958 and that respondent was aware of this fact. There is also an indication that Matie Baker did live for some time in petitioner's home and that the property was deeded back to Matie Baker shortly after she left petitioner's home. From all the facts of record in connection with this transaction, we have concluded that petitioner was holding this property as trustee for Matie Baker and have eliminated it from petitioner's assets. The other evidence of record supports petitioner's testimony that the expenses of food, outside meals, and general purchases have been overstated by respondent in his net worth computation. The evidence shows that petitioners lived frugally. There is also support in the record for petitioner's *323 testimony that when he is making a house call or doing his church work, he is asked to join others for meals, and, occasionally, is given items of food and clothing, either to use himself or give to the needy. The record shows that petitioners lived on a farm during the years here in issue from which dairy products and vegetables were produced primarily for the use of the family. From the evidence, we have determined petitioner's expenditures for food, outside meals, and incidental purchases to $500be, $50, and $1,000, respectively, for each of the taxable years here in issue. Respondent's figures for incidental purchases were arrived at by using the amounts claimed by petitioners on their income tax returns as sales tax deductions. Petitioner testified that he did not supply the attorney who prepared the returns with any figures supporting the sales tax deductions claimed, but rather the attorney determined this deduction to be in an amount equal to 1 percent of the gross receipts from petitioner's Christian Science practice. Since the evidence supports lower figures for incidental expenditures than those determined from the claimed sales tax deduction, we have also adjusted the *324 amounts of sales tax expenditures themselves to coincide with our determination of incidental expenditures for each of the years of $1,000. Respondent determined petitioner had utilities and personal automobile expenses of $100 and $250, respectively, for each of the taxable years here involved and vacation expenses for the 3 years of $300, $300, $600, respectively. We have adopted respondent's figures respecting these expenses. The amounts are most reasonable. Petitioner's testimony actually supports the amounts as determined by respondent as to utilities and automobile expenses. There is no evidence as to the amount of petitioners' vacation expenses. Respondent in his brief, in listing petitioner's assets, used figures representing the value of office and farm equipment which are higher than the figures used for the same items in his notice of deficiency. The only evidence pertaining to either set of figures is testimony by an agent of respondent that the figures used in the notice of deficiency were arrived at through a compromise discussion between an agent of respondent and an accountant representing petitioner. Petitioner testified that certain of the farm equipment and livestock *325 did not belong to him but rather that it was property belonging to his son. Of course, assets not belonging to petitioner should not be included in his net worth. However, there is nothing to show whether or not the assets belonging to petitioner's son, if in fact such assets did belong to the son, were considered as petitioner's property in determining the amounts of the items as set forth in the notice of deficiency. Petitioner has failed to show error in the figures used in the notice of deficiency. The evidence is insufficient to support the figures respondent used on brief. We have therefore adopted the values for office and farm equipment contained in the notice of deficiency. Respondent determined for each of the years here involved, an addition to tax because of fraud. Upon consideration of all the evidence we hold respondent has shown by clear and convincing evidence that a part of the deficiency for 1956 is due to fraud. While the evidence creates a suspicion of fraud for 1954, it is not clear and convincing. There is no deficiency for 1955. It is seldom possible to establish a fraudulent intent by direct proof but rather it must be inferred from all the evidence. M. Rea Gano, 19 B.T.A. 518 (1930), *326 and Harry Gleis, supra. For the year 1956 petitioners understated their income by $25,896.67 which is approximately three and one-half times the amount of adjusted gross income reported by them on their income tax return. The record shows that petitioner was evasive and not truthful in disclosing his assets to respondent's agents. We do not believe that petitioner's ownership of the Douglas Road and Garland Place properties "slipped" his mind. In listing property he owned, petitioner not only failed to mention to respondent's agents his ownership of the Montana ranch, but even went so far as to misrepresent the amount of money he borrowed from Esther Southward so as not to reveal the source of funds from which the ranch was purchased. His only explanation for his duplicity was that he was "skeptical" of telling the agent about his ownership of the property. Fraudulent intent may be inferred from these acts of concealment. See Spies v. United States, 317 U.S. 492 (1943). Petitioner claims that he borrowed $15,500 from Hazel Rummel, an elderly female patient of his, and that this amount was used in purchasing the Montana ranch. When respondent's agent interrogated *327 Hazel Rummel in 1957 in petitioner's presence, she confirmed the fact that she had made the loan to petitioner and that petitioner had invested the money in the Montana ranch. Hazel Rummel has since died. Her son testified at the trial that, to his knowledge, she had few assets and could not have made a loan to petitioner in the amount of $15,500. The son was so convinced of the improbability of the existence of such a loan that as executor of his mother's estate, he was not going to include the loan as an asset of the estate or make any claim for its repayment. There was no written evidence of such a loan. The record shows that Hazel Rummel was never engaged in any gainful employment. She had only the money supplied to her by her husband. In 1956 Hazel Rummel's husband was living. He was retired and he and his wife were living on a pension plus a small salary for work he did for his son. The record shows that Hazel Rummel could be easily influenced by petitioner. Considering the evidence as a whole, we do not accept petitioner's testimony that Hazel Rummel lent him $15,500 in 1956. Even if petitioner had received a loan of $15,500, there would still be left an unexplained increase *328 in his net worth in 1956 of approximately $10,000, which is about 140 percent of the amount of adjusted gross income reported by petitioners for the year 1956. Petitioner has offered no other explanation for his net worth increase for 1956. At the trial he made no contention that in 1956 he still had in cash $10,000 of the amount he had borrowed from Esther Southward in 1953 and prior years. Petitioner's Christian Science practice itself affords a likely source of income. From Esther Southward's testimony it appears that his patients in many instances would feel directed to pay him substantial amounts. In 1954, petitioner acquired no new properties. His increase in net worth is primarily due to a reduction in an indebtedness on the Douglas Road property. While the likely source of such additional income was petitioner's Christian Science practice, such an understatement is insufficient to show fraud when considered in conjunction with the other evidence of record. Petitioner has introduced no evidence respecting the addition to tax under section 294(d)(2) of the Internal Revenue Code of 1939. Consequently we sustain respondent in his determination, except to the extent the amount *329 is adjusted by adjustments made to the amount of petitioners' taxable income. Petitioners, in the year 1956, made charitable contributions in excess of the limitation provided in section 170(b) of the Internal Revenue Code of 1954. In view of the determined increase in petitioners' adjusted gross income for the year 1956, an appropriate adjustment should be made to petitioners' allowable deduction for charitable contributions. Decision will be entered under Rule 50. Footnotes
1. The reductions in basis for these properties result from petitioners' receipt of principal payments from individuals who purchased the properties from petitioners under land contracts.↩