A. A. AARON, INCORPORATED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent BENJAMIN GRADUS and SONIA GRADUS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
A. A. Aaron, Inc. v. Commissioner
Docket Nos. 6240-75, 6276-75.
United States Tax Court
T.C. Memo 1978-28; 1978 Tax Ct. Memo LEXIS 489; 37 T.C.M. (CCH) 164; T.C.M. (RIA) 780028; January 23, 1978, Filed *489 Respondent determined that petitioners Benjamin and Sonia Gradus had unreported taxable income in the years 1967-1970 by use of the net worth and expenditures method and that the source of the unreported income was unreported gross receipts of A. A. Aaron, Inc., a corporation of which Benjamin Gradus was the sole stockholder. Respondent also determined that petitioner A. A. Aaron, Inc., had unreported taxable income in its fiscal years Nov. 30, 1967-1971 in the amount of the unreported income of the Graduses. Held: Petitioners Benjamin and Sonia Gradus failed to prove error in respondent's computation of unreported income by the net worth method; they failed to prove cash on hand at the beginning of the period. Respondent's determination of unreported taxable income for the Graduses for each of the years involved, as adjusted by stipulations, approved. Held,further: Respondent's determination of unreported income for A. A. Aaron, Inc., for each of the years involved, approved. Held,further: Respondent proved by clear and convincing evidence that the returns filed by petitioners Benjamin and Sonia Gradus and petitioner A. A. Aaron, Inc., for each of the years involved were fraudulent *490 with intent to evade tax. Sidney A. Soltz, for the petitioners. Thomas M. Cryan, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: In these consolidated cases respondent determined deficiencies in Federal income tax and additions to tax as follows: Addition to tax Docket
under sec. 6653(b), No.
Petitioner
TYE
Deficiency
I.R.C. 1954 [1]
6240-75
A.A. Aaron, Inc.
11/30/67
$ 47,474.52
$ 23,737.26
11/30/68
15,548.80
7,774.40
11/30/69
367,740.58
183,870.29
11/30/70
248,301.23
124,150.61
11/30/71
267,493.21
133,746.61
6276-75
Benjamin Gradus
12/31/67
62,168.42
31,084.21
and Sonia Gradus
12/31/68
20,812.89
10,406.45
12/31/69
84,606.27
42,303.14
12/31/70
131,707.99
65,853.99
Some questions have been resolved, leaving these issues for our decision: 1. Whether Benjamin and Sonia Gradus had unreported taxable income for 1967 through 1970 as computed by respondent under the increase in net worth and nondeductible expenditures method. 2. Whether Benjamin and Sonia Gradus are liable for the civil fraud addition to tax under section 6653(b) for 1967 through 1970. *491 [2]
3. Whether the assessment of deficiencies against Benjamin and Sonia Gradus for 1967 through 1970 is barred by the statute of limitations. 4. Whether A. A. Aaron, Inc., had unreported gross receipts from sales for the years ended November 30, 1967, through November 30, 1971. 5. Whether A. A. Aaron, Inc., is liable for the civil fraud addition to tax under section 6653(b) for the years ended November 30, 1967, through November 30, 1971. 6. Whether the assessment of deficiencies against A. A. Aaron, Inc., for the years ended November 30, 1967, through November 30, 1971, is barred by the statute of limitations. Whether A. A. Aaron, Inc., is entitled to a net operating loss carryforward for the year ended November 30, 1969, is contingent upon the amount of any omitted sales for the year ended November 30, 1968. FINDINGS OF FACT Many of the facts have been stipulated and are found as stipulated. Petitioner A. A. Aaron, Inc. (hereinafter *492 Aaron), docket No. 6240-75, filed its Federal income tax returns for its fiscal years ended November 30, 1967 through 1971 with the district director, Jacksonville, Fla. Aaron had its offices at Miami, Fla., as of the date its petition was filed. Petitioners Benjamin and Sonia Gradus, docket No. 6276-75, are husband and wife. They timely filed their Federal income tax returns for the calendar years 1967 through 1970 with the district director, Jacksonville, Fla. Benjamin and Sonia Gradus resided in North Miami Beach, Fla., as of the date their petition was filed. Aaron is a Florida corporation in the business of renting and selling automobiles. Benjamin Gradus is its sole shareholder and president. During the years 1967 through 1971, Aaron rented automobiles on a daily basis and required each customer to execute a rental contract prior to renting a particular automobile. The rental contracts were printed by printing companies selected by Gradus but were unnumbered. Gradus used a stamping machine to stamp consecutive numbers on these contracts. However, Gradus would often stamp the same number on two or three contracts. Gradus preferred that Aaron's customers pay the car rental *493 charges in cash rather than with credit cards. This saved the commission due the credit card companies for accounts they collected and the delay in collection. Consequently, there were no signs at Aaron's place of business indicating that Aaron accepted credit cards. However, Aaron did accept credit cards and many of its rental charges were paid through use of credit cards. No books of account were maintained by Aaron. The only records maintained by Aaron were bank records, such as checks, deposit slips, and bank statements. Gradus had complete control over the rental receipts from customers who rented automobiles from Aaron and he made the decision as to how much of the recipts would be deposited in Aaron's bank account. Not all recipts were deposited in the bank account; cash was used to meet some of the operating expenses. Aaron's income tax returns were prepared by an accountant working from the bank records. The accountant prepared spread sheets based on the bank records and also prepared adjusting journal entries on workpapers for the purpose of preparing the tax returns and unaudited financial statements for Aaron for the years in question. During the years 1967 through *494 1971, Aaron insured the drivers of its rental automobiles with various insurance companies whose premiums were a certain percentage of the gross receipts received from automobile rentals. At the end of each month, Gradus would prepare and submit a gross receipts report to the insurance company and retain copies of the rental contracts on which this gross receipts report was based so that the insurance company might verify the accuracy of this report. The gross receipts report submitted by Gradus to the insurance company was based only on a portion of the total gross receipts from automobile rentals which were received by Aaron during a particular month. Gradus would select particular contracts to arrive at a gross receipts figure for the monthly report to the insurance company and was able to make such selections without fear of being discovered by the insurance company since he had placed the same number on two or three rental contracts. As a result of Gradus' failure to report total gross receipts from automobile rentals to the insurance company, Aaron did not pay the full amount of its required insurance premiums to the insurance company. Aaron reported the following gross *495 receipts from sales and taxable income on its Federal income tax returns: FYE
Gross receipts
Taxable Sept. 30,
Sales
income
1967
$407,875.08
$ 1,762.87
1968
855,870.36
(2,783.31)
1969
1,248,465.00
1,178.00
1970
1,657,730.07
2,221.27
1971
1,418.441.31
3,260.97
Respondent, after determining on the basis of a net worth and nondeductible expenditures computation that Benjamin and Sonia Gradus had understated their taxable income for the years 1967-70, also determined that the source of the Graduses' unreported income was diverted unreported gross receipts from Aaron's business, and in the notice of deficiency issued to Aaron added the unreported income of the Graduses to the income of Aaron, thus producing the deficiencies in Aaron's income now in dispute. [3] Pointing to omitted sales from Aaron as a likely source of increases in Benjamin and Sonia Graduses' net worth, respondent determined they had unreported taxable income as follows: BENJAMIN AND SONIA *496 GRADUS UNREPORTED TAXABLE INCOME
1966
1967
1968
1969
1970
Net worth
(Dec. 31)
$131,320.81
$255,013.73
$327,777.88
$447,778.10
$657,633.50
Net worth increase
123,692.92
72,764.15
120,000.22
209,855.40
Add: Personal living and
miscellaneous expenses
12,102.88
20,867.87
37,830.74
52,280.88
Less: Adjustments to gross
income
(2,597.66)
(23,082.87)
--
(27,028.60)
Adjusted gross income
133,198.14
70,549.15
157,830.96
235,107.68
Less: Standard deduction
and personal exemp-
tions
4,000.00
4,000.00
4,000.00
4,125.00
Corrected taxable income
129,198.14
66,549.15
153,830.96
230,982.68
Less: Reported taxable income
7,570.48
27,422.23
13,335.00
19,649.17
Unreported taxable income per
notice of deficiency
121,627.66
39,126.92
140,495.96
211,333.51
Less: Concessions by respon-
dent at trial
40,252.90 [1]
--
--
1,000.00 [2]
Unreported taxable income
$81,374.76
$39,126.92
$140,495.96
$210,333.51
The parties agree to the below-the-line adjustments made by respondent to the increases in net worth *497 in arriving at taxable income in the foregoing computation. Following are the net worth computations supporting respondent's reconstruction of taxable income: BENJAMIN AND SONIA GRADUS NET WORTH (as of December 31) ASSETS
1966
1967
1968
1969
1970
Cash on hand
0.00
0.00
0.00
0.00
0.00
Cash in checking account
$ 1,628.07
$ 1,425.83
$ 2,211.87
$ 1,680.90
$ 1,715.08
Cash in savings accounts
2,968.84
3,645.77
6,337.61
32,150.28
14,751.03
Savings certificates
6,000.00
21,000.00
31,000.00
34,373.86
34,825.20
Stocks
47,106.74
35,630.27
0.00
21,640.50
67,454.92
Bunds and notes
75.00
5,775.00
79,512.50
144,348.28
304,210.05
Investments in corporations
operated by petitioners
22,223.05
118,968.86
120,351.96
134,766.28
171,359.22
Real property
57,525.00
68,568.00
68,568.00
78,818.00
63,318.00
Outstanding check dated 12-31-68 from
liquidation of Duane, Inc.
0.00
.000
19,795.94
0.00
0.00
Escrow funds
804.36
0.00
0.00
0.00
0.00
Constiuction fund
29,285.37
0.00
0.00
0.00
0.00
TOTAL ASSETS
$167,616.43
$255,013.73
$327,777.88
$447,778.10
$657,633.50
LIABILITIES
Accounts payable
0.00
0.00
0.00
0.00
0.00
Real property mortgages
36,295.62
0.00
0.00
0.00
0.00
TOTAL LIABILITIES
$ 36,295.02
$ 0.00
$ 0.00
$ 0.00
$ 0.00
NET WORTH
$131,320.81
$255,013.73
$327,777.88
$447,778.10
$657,633.50 The only item in the *498 foregoing net worth statement now in dispute is the amount of cash on hand as of December 31, 1966, and thereafter. Sol Cohen, the father of Sonia Gradus and a resident of North Miami Beach, Fla., died on July 5, 1965, while visiting in California. He did not leave a will. Bella Cohen, the decedent's surviving spouse, qualified as administratrix of his estate in Florida. Decedent's wife Bella, his daughter Sonia Gradus, and his son Dr. Robert Cone of Long Beach, Calif., were determined to be his heirs. The inventories filed by Bella Cohen indicated that Sol Cohen did not possess at his death either cash or other assets that might be readily converted into cash. A Federal estate tax return was filed for the estate of Sol Cohen on October 7, 1966. This return indicated that decedent was 60 years old at the time of his death and was retired from the banana importing and exporting business. Assets reported on the return were: 100 shares of Duane, Inc. valued at
$ 37,521.84
Loansreceivable - Duane, Inc.,
valued at
69,368.78
3 jointly held interests in real
estate, valued at
37,375.00
Personal effects
100.00
The total gross estate was valued at
$144,365.62 As a result of an audit of the return *499 the value of two items was increased by small amounts and a deficiency of $765.72 was agreed to on September 8, 1967. An order of distribution of the estate entered on October 22, 1968, approved distribution of the estate one-third to each of the three beneficiaries. However, as a result of a suit brought by Bella Cohen (Bamberger) against Robert Cone, Benjamin Gradus, and Sonia Gradus, a joint stipulation dated October 27, 1970, was agreed to whereby, in effect, Bella Cohen became entitled to 50 percent of the Sol Cohen estate and Robert Cone and Sonia Gradus became entitled to 25 percent each. During the course of this proceeding Benjamin Gradus testified by deposition that he did not receive any financial assistance from his in-laws during his marriage. Sometime prior to October 22, in 1965, Benjamin Gradus leased a safe deposit box, number 608, in his name alone at the International Bank, Miami, Fla. In May 1966 a Helene Gradus was made a joint lessee of this box. This box was entered by Benjamin Gradus five times in 1965, one time in 1966, and six times in 1967. On March 5, 1968, this box was surrendered, and on the same day another box, number 921, in the same bank, was *500 leased by Benjamin and Sonia Gradus. On March 27, 1967, a safe deposit box, number 2508E, at the Riverside Bank, Miami, Fla., was leased in the joint names of Ben Gradus or Sonia Gradus. Neither Benjamin nor Sonia Gradus leased any other safe deposit boxes during the years 1965 through 1970. On or about January 31, 1967, Bella Gradus Lotto, Benjamin Gradus' mother, gave Benjamin $40,252.90. She obtained these funds from her savings accounts. After withdrawal of these funds, the balance in her accounts was $30, and no further deposits were made as of the date of her death. Benjamin Gradus used the $40,252.90 given him by Bella Gradus Lotto to satisfy his liability for stock subscriptions payable to A. Aaron Auto, Inc., in the same amount. Bella Gradus Lotto died March 4, 1967. No probate proceedings and no Federal estate tax return were filed for her estate. Benjamin and Sonia Gradus submitted financial statements to Riverside Bank on September 1, 1966, and September 1, 1967, for the purpose of obtaining loans. These statements showed cash on hand and in banks of $72,500 as of September 1, 1966, and $75,000 as of September 1, 1967. During 1967 through 1970 Benjamin Gradus *501 purchased cashier's checks at Riverside Bank and paid for them with either cash or cash equivalents but not with checks drawn on his personal checking account. Following are the total amounts for the cashier's checks: Year
Amount
1967
$ 15,247.93
1968
5,968.90
1969
82,710.19
1970
163,464.17
Total
$267,391.19
The first contact between petitioners and respondent's agents occurred on March 1, 1972, when Special Agents Eugene T. Fortenberry and Allen P. Rossi went to Aaron's business offices. After Fortenberry had advised Benjamin Gradus of his constitutional rights under the Fifth and Sixth Amendments, Gradus stated that he did not want to answer any questions at that time until he had first had an opportunity to discuss the matter with his accountant. On March 7, 1972, Special Agents Rossi and Fortenberry went to the offices of George Trager, an attorney Benjamin Gradus had retained to represent him. On advice of counsel, Gradus refused to answer any questions asked by the agents of the respondent concerning his individual income tax return for the taxable year 1967 and the income tax return for Aaron for the year ended November 30, 1967. On advice of counsel, Gradus refused to answer any questions *502 about whether he regularly kept substantial amounts of currency or negotiable instruments outside his bank accounts, how much of such funds he had on hand at the close of each year under investigation, and whether he had any records of the amounts of such funds. On advice of counsel, Benjamin Gradus refused to make available to the respondent any financial records of Aaron for the taxable years ended November 30, 1967, and November 30, 1968. On June 25, 1973, Special Agents William P. Bushmiaer and Larry Sands went to the offices of George Trager who was still representing Benjamin Gradus. Trager advised the agents of the respondent that Gradus would not answer any questions asked by respondent's agents.Respondent's agents informed Trager that they were using the net worth method to determine the taxable income of Gradus for 1967 through 1970 and asked Trager if he would submit a net worth schedule of the Graduses as of December 31, 1971. Trager stated that he would not submit such a schedule and would not submit any explanatio of what appeared to be unexplained increases in Benjamin and Sonia Gradus' net worth. At this time, Trager stated that he would not furnish respondent's *503 agents with the checks written by the Graduses during 1968 and that he would not furnish any of their personal income records for any of the years, such as records of the receipt of dividends showing the date and amount received. The Graduses and their representatives were not informed of the net worth computations, criminal income tax figures, or civil income tax figures of the respondent until some time after November 9, 1973. On November 9, 1973, Trager and the Graduses attended a conference in Atlanta, Ga., at the offices of the Regional Counsel, Southeast Region. Present for the government at this conference were Charles P. Hanfman and Thomas F. Niels, Regional Counsel attorneys. The reason for this conference was to discuss the criminal case that had been investigated by agents of respondent. During this conference on November 9, 1973, in the presence of the Graduses, George Trager made the following statements: Gradus had between $50,000 and $100,000 cash on hand at the beginning of the prosecution period. Gradus had received two inheritances totaling $50,000 or more. The one inheritance was from Mrs. Gradus' father and was a matter of Court record. The other inheritance *504 was from Mr. Gradus' mother but there was no estate on the record for her. "The prosecution period" referred to in the abovequoted statement is the period from January 1, 1967, to December 31, 1970. On February 28, 1975, Benjamin Gradus was found guilty in accordance with his plea in the United States District Court for the Southern District of Florida of violating section 7206(1) for willfully signing his 1970 income tax return (Form 1040) under the penalties of perjury, which said return he did not believe to be true and correct as to every material matter. The charge to which Gradus pleaded guilty was as follows: On or about April 15, 1971, at Miami, Dade County, in the Southern District of Florida, the defendant, Benjamin Gradus a resident of Dade County, Florida, did knowingly and wilfully make and subscribe to a 1970 United States Individual Income Tax Return, Form 1040, for himself and his wife, which was verified by a written declaration that it was made under the penalties of perjury, which was filed with the District Director of the Internal Revenue Service Center, Chamblee, Georgia, which said Individual Tax Return he did not believe to be true and correct as to every *505 material matter in that said income tax return stated that their joint taxable income for the calendar year 1970 was the sum of $19,649.17 and that the amount of tax due and owing thereon was the sum of $4,276.59, whereas the defendant then well knew and believed that their joint taxable income for said calendar year was the sum of $177,223.01 upon which said taxable income there was the amount of tax due and owing to the United States of $88,924.68; in violation of Section 7206(1), Internal Revenue Code; Title 26, United States Code, Section 7206(1). Gradus pleaded guilty to the above charge on the advice of counsel. All the income tax returns for the years in issue were filed on or before their due dates. [4] Notices of deficiency with respect to the *506 years in issue were sent to Benjamin and Sonia Gradus and Aaron by certified mail on April 10, 1975. ULTIMATE FINDINGS OF FACT Substantial sums of cash received from Aaron's customers were not deposited in Aaron's bank accounts and were diverted to Benjamin and Sonia Gradus' use. Benjamin and Sonia Gradus had unreported taxable income for 1967 through 1970 of $81,374.76, $39,126.92, $140,495.96, and $210,333.51, respectively. Benjamin and Sonia Gradus' underpayment of tax for 1967 through 1970 was due to fraud with intent to evade tax. Aaron had substantial unreported sales for the years ended November 30, 1967, through November 30, 1971. Aaron's underpayment of tax for the years ended November 30, 1967, through November 30, 1971, was due to fraud with intent to evade tax. OPINION Respondent used the net worth and expenditures method to determine the taxable income of Benjamin and Sonia Gradus for the years 1967 - 1970 in docket No. 6276-75 because, among other reasons, the Graduses refused to turn over their personal income records for those years to respondent's agents and to explain the substantial increases in their net worth during this period. Respondent's right to use the *507 net worth method under the circumstances cannot be doubted. Holland v. United States,348 U.S. 121 (1954); Lipsitz v. Commissioner,21 T.C. 917, 931 (1954), affd. 220 F. 2d 871 (4th Cir. 1955). Respondent also determined that the likely source of the Graduses' unreported income as so computed was the diversion of part of the gross receipts of Aaron, their wholly owned corporation, to their own use. Respondent also determined that the gross receipts of Aaron that were diverted to the use of the Graduses were not included in the income reported by Aaron and determined deficiencies in Aaron's tax liability by adding the diverted receipts to the income reported by Aaron. Respondent determined further that the deficiencies of both Aaron and the Graduses were due to fraud with intent to evade tax and asserted the civil fraud penalty under section 6653(b) in both cases. Petitioners argue that collection of any of the deficiencies is barred by the statute of limitations. Respondent relies on fraud under section 6501(c) to lift the statute of limitations with respect to the tax liabilities of both taxpayers for all years involved, and, in addition, on the 25-percent omissionof gross income *508 under section 6501(e)(1)(A) to lift the statute of limitations with respect to the tax liabilities of the Graduses for 1968, 1969, and 1970. Respondent has the burden of proving fraud for both the purpose of imposing the fraud penalty under section 6653(b) and lifting the statute of limitations under section 6501(c), Estate of Temple v. Commissioner,67 T.C. 143, 159 (1976); and also in proving the 25-percent omission of gross income under section 6501(e)(1)(A), Miller v. Commissioner,51 T.C. 915 (1969). This proof must be by clear and convincing evidence. However, petitioners have the burden of proving error in respondent's determination of the deficiencies in taxes, Welch v. Helvering,290 U.S. 111 (1933), and Rule 142(a), Rules of Practice and Procedure, United States Tax Court. Nevertheless, in net worth cases respondent must establish with reasonable certainty, the net worth of the petitioners at the beginning of the period and a reasonable source for the unreported income. Holland v. United States,supra.
Benjamin and Sonia Gradus
Respondent's computation of unreported taxable income of the individual taxpayers is disputed by the taxpayers only with respect to the opening *509 net worth. In particular, the only item in respondent's net worth statement with which petitioners disagree is undeposited cash on hand. In his net worth computation respondent allowed no undeposited cash on hand at the beginning of the net worth period, January 1, 1967, and at the end of the net worth period, December 31, 1970, nor as of the beginning of any of the intervening years. The Graduses claim they had undeposited cash in excess of $300,000 as of January 1, 1967. [5] *510 They offered no evidence as to the amount of undeposited cash they had as of December 31, 1970, or at the beginning of any of the intervening years, nor how the alleged beginning cash, if it was all dispersed during the period, was used to acquire other assets or reduce liabilities. Thus, even if we conclude that these petitioners had some undeposited cash at the beginning of the period, we have no proof, or even arguments, from petitioners as to when it should be applied to reduce the increases in net worth in the specific taxable years within the net worth period. First, we find that respondent was justified in allowing no undeposited cash throughout the period in his net worth computation. Of course, this does not serve to either increase or decrease net worth for any year in the computation. Petitioners offered the revenue agents no proof that they had undeposited cash at the beginning of the period and, through counsel, refused to furnish the agents with their own net worth statement as of the end of the period. At the conclusion of the audit, during a conference concerned with whether petitioners should be prosecuted for criminal tax evasion, petitioners' counsel told respondent's representatives that petitioners had between $50,000 and $100,000 cash on hand at the beginning of the prosecution period, January 1, 1967, which they had received through inheritances from Sonia Gradus' father and Benjamin Gradus' mother. A quick look at the documents filed with regard to the probate of the estate of Sonia Gradus' father, Sol Cohen, who died in April 1965, and the estate tax return filed for the estate reveal that there was no cash in the estate and that the other assets had been distributed in kind and were *511 accounted for. Benjamin Gradus' mother, Bella Gradus Lotto, did not die until March 4, 1967, after the beginning of the net worth period. Her estate was not probated and no estate tax return was filed. [6]
At the trial petitioners offered the testimony of Benjamin Gradus and Robert Cone to support their claim that the Graduses had in excess of $300,000 undeposited cash as of January 1, 1967. Benjamin Gradus testified that immediately after Sol Cohen died in California, Robert Cone, son of Sol Cohen and brother of Sonia Gradus, gave him a suitcase belonging to Sol Cohen containing $355,000 in currency which Cone told him to take back to Florida to hold in a safe place. Gradus said he took the suitcase back to Florida with him on an airplane, counted the money after he was home, and then deposited it in his safe deposit boxes. He said he put the money in several boxes because one box would not hold it all. He further testified that from *512 time to time thereafter he withdrew money from the safe deposit boxes, bought cashier's checks with it, and used the checks to purchase securities and other assets. The weakness in this account is that the record indicates that petitioner leased only one safe deposit box between 1965 and 1967 and did not lease a second one until March 27, 1967; and that we were offered little or no convincing evidence that would tie in entries into the safe deposit boxes with acquisition of assets. Furthermore, the cash used to purchase the cashier's checks could just as well have come from undeposited gross receipts of Aaron as from the alleged cash hoard. Robert Cone testified substantially as follows. He had observed that his father habitually carried in his pocket or with him substantial amounts of cash. He would carry with him a Samsonite suitcase containing money and other papers. Cone, a plastic surgeon with some psychiatric training, believed his father carried this money with him because he was neurotic about State of New York tax agents coming to seize the money to apply on an old tax liability that Sol did not believe he owed. Before entering the hospital in California where he died *513 in April 1965, Sol Cohen gave Cone the suitcase with $50 and $100 bills throughout the top and papers underneath and told him not to tell Bella Cohen about it. Immediately after Sol Cohen died, without counting the money, Cone gave the suitcase to Benjamin Gradus, pursuant to Sol Cohen's instructions, and told him to take it back to Florida with him and hold it in a safe place. Cone believed half the money was his, although there is no sound evidence of any accounting betwen the parties. Both Gradus and Cone testified that they never told Bella Cohen, Sol's widow and Cone's stepmother, about the money in the suitcase. This testimony, too, is far from convincing. First we have no way of knowing whether Sol Cohen could have accumulated such a large hoard of cash. The estate tax return indicates he was retired at the time of his death. His total gross estate reported in the probate proceedings and on the estate tax return had a value of between $144,000 and $160,000 and contained no cash or other assets that could be readily converted to cash. We find it hard to believe that Sol Cohen would take his "cash hoard" with him on a vacation trip to California when he apparently instructed *514 Cone to turn it over to Gradus, who also lived in Miami, in the event of his death. It is also incredible that if Cone thought half of the money was his he would turn it over to Gradus without even counting it and without a more definite understanding with regard to receiving his share. There are only two logical explanations of such conduct; either Cone and Gradus wanted to withhold knowledge of the cash from Bella Cohen (and thus deprive her of her share of it as a beneficiary of the estate) and from the taxing authorities, or that Sol Cohen gave little or no cash to Cone and Gradus at the time of his death. While we recognize that Sol Cohen may have had some undeposited cash at the time of his death, we have no way of knowing how much there was or what happened to it between the time of his death and January 1, 1967. Gradus' testimony also conflicts with previous statements made by petitioners. On September 1, 1966, in applying for a loan, the Graduses represented to a bank that they had cash on hand and in banks of only $72,500. There is also a question of why they were applying for a loan if they had $355,000 in cash on hand. In a deposition taken May 25, 1970, in connection *515 with the lawsuit brought by Bella Cohen, Benjamin Gradus testified that he did not receive any financial assistance from his in-laws during his marriage. In judging Benjamin Gradus' credibility, we have also taken into account that he pleaded guilty of willfully making and subscribing to a return for 1970 he did not believe to be true and correct; and that he also testified that he failed to report to Aaron's insurance companies the full amount of Aaron's rental receipts upon which the insurance premiums were supposed to be based. In short, no credible evidence was presented to show petitioners had any substantial mount of undeposited cash as of January 1, 1967. We therefore find that respondent established with reasonable certainty the net worth of the Graduses at the beginning of the net worth period. Respondent has also shown that the likely source for the increases in petitioners' net worth was diverted gross receipts from Aaron. Benjamin Gradus had complete control of the operations and financial accounting of Aaron. He decided what receipts of Aaron were to be deposited in its bank account and he admitted that all gross receipts were not deposited. No formal books of accounting *516 were kept for Aaron and the daily receipts were available to Gradus. Gradus duplicated numbers on various contracts so it would have been possible to account for receipts on all the numbers while still withholding receipts from the contracts bearing duplicate numbers. Although the funds respondent alleges were diverted from Aaron were large (ranging from $81,374.76 in calendar year 1967 to $210,333.51 in calendar year 1970), such diversions are not unreasonable in view of Aaron's reported sales (ranging from $407,875.08 in fiscal year 1967 to $1,418,441.31 in fiscal year 1971). A large part of the gross receipts on these sales were in cash. It is also noteworthy that despite the rather large volume of sales reported on Aaron's tax returns for the years involved, the taxable income reported was $1,762.87 for fiscal 1967, ($2,783.31) for fiscal 1968, $1,178 for fiscal 1969, $2,221.27 for fiscal 1970, and $3,260.97 for fiscal 1971. In light of these facts respondent has shown that Aaron was a likely source of the unreported funds used by the Graduses to increase their net worth. In fact petitioners, through their attorney, admitted that they were unable to explain an increase in *517 net worth of $102,584.05 in 1970 and that it most likely came from omitted sales of Aaron. Since respondent established an opening net worth with reasonable certainty, investigated leads with respect to possible nontaxable sources of income, and proved a likely source of taxable income to account for the net worth increases, respondent's use of the net worth method to compute the Graduses' taxable income was clearly justified. Holland v. United States,supra. And since petitioners have failed to carry their burden of proving error in respondent's computations, we must affirm respondent's determination with respect thereto, with such adjustments as are provided in the stipulations. Where respondent proves by clear and convincing evidence that any part of an underpayment of tax for a particular year is due to fraud with intent to evade tax, section 6653(b) imposes a 50-percent addition to the underpayment. In addition, under section 6501(c)(1), taxes relating to a false or fraudulent return filed with the intent to evade tax may be assessed at any time so that the statute of limitations does not bar assessment of the deficiency or the fraud penalty. Our finding of fact that each *518 of the Graduses' returns for the years 1967 through 1970 were fraudulent with the intent to evade tax disposes of both these issues. [7]
Throughout the 4 years in issue petitioners consistently and substantially under reported income. This is strong evidence of their intent to evade taxes. Merritt v. Commissioner,301 F. 2d 484 (5th Cir. 1962). Furthermore, we are convinced by all the evidence that the scheme whereby Benjamin Gradus diverted and concealed income from Aaron's sales was a deliberate effort to evade taxes on those diverted funds.Similar schemes to conceal income have been recognized by this Court as an indicia of fraud. [8] Still other badges of fraud are Benjamin Gradus' refusal to turn over to respondent's agents any of their personal income records for any of the years, his refusal to answer respondent's agents' question about his financial affairs during the course of their investigation, and his refusal to make available to respondent's agents Aaron's financial records for the years ended November 30, 1967, and November 30, 1968. Gromacki v. Commissioner,361 F. 2d 727 (7th Cir. 1966), affg. a Memorandum Opinion *519 of this Court. Taking into account these considerations and the entire record, we have found respondent has met his burden of proof with respect to the fraud issues. In fact, the evidence and the circumstances as a whole leave little doubt in our minds that Gradus was deliberately attempting to evade payment of taxes on a large part of his own income and the income of Aaron throughout the period involved. Accordingly, Benjamin and Sonia Gradus are liable for the civil fraud addition to tax under section 6653(b) for each year and the statute of limitations does not bar assessment of the deficiencies or additions to tax. A. A. Aaron, Inc. Consistent with our finding that the source of the Graduses' unreported taxable income for 1967 through 1970 was from gross receipts or sales omitted from the taxable income reported on Aaron's Federal income tax returns for its fiscal years ending November 30, 1967, through 1971, we agree with respondent that Aaron's taxable income for those years must be recomputed by adding to Aaron's reported income the unreported *520 income determined for the Graduses. Since Aaron was on a November 30 fiscal year and the Graduses' income was determined on a calendar year basis, respondent computed Aaron's omitted income assuming a ratable diversion of funds. Specifically, Aaron's omitted sales were derived using these assumptions: For FYE
Ratable portion of Graduses' Nov. 30,
unreported taxable income
1967
11/12ths of 1967
1968
1/12th 1967 plus 11/12ths 1968
1969
1/12th 1968 plus 11/12ths 1969
1970
1/12th 1969 plus 11/12ths 1970
1971
1/12th of 1970
We believe this is a reasonable approach and approve it. [9]
Finally, respondent also determined that a part of Aaron's underpayment of tax for each year was due to fraud with intent to evade tax so that the 50-percent addition to tax should be imposed, see sec. 6653(b), and that each taxable year is also open for assessment, see sec. 6501(c)(1). A corporation is liable for fraud if the corporate officer has the fraudulent intent to evade the corporation's taxes. Federbush v. Commissioner,34 T.C. 740 (1960), affd. 325 F. 2d 1 (2d Cir. 1963). Benjamin Gradus, Aaron's sole shareholder and president, knew *521 that if he withheld sales receipts and failed to put them in Aaron's bank account, the accountant who prepared the corporate returns would not report these sales because the accountant worked strictly from the bank records. Gradus also knew of the omitted sales when he signed the corporate returns. In view of these facts, we have found Aaron's underpayment of tax for the years ended November 30, 1967, through November 30, 1971, was due to fraud with intent to evade tax. Accordingly, Aaron is liable for the civil fraud addition to tax under section 6653(b) for each year and the statute of limitations does not bar assessment of the deficiencies or additions to tax. Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise specified.↩
2. Petitioners pleaded the innocent spouse statute, sec. 6013(e), in Sonia's behalf but offered no evidence in support of the allegation and neither party mentioned the statute during the trial or on brief so we assume petitioners waived the issue.↩
3. In the notice of deficiency respondent also disallowed rather large amounts of purchases and interest expenses claimed by Aaron for the years 1967, 1970, and 1971. However, the parties have stipulated that the amounts claimed on the returns were correct.↩
1. Respondent conceded that Benjamin Gradus received this amount on or about January 31, 1967, from his mother, Bella Gradus Lotto, a nontaxable source. ↩
2. Respondent agreed that joint itemized deductions of $2,000 were allowable for 1970 in lieu of the standard deduction of $1,000.↩
4. This fact is not readily apparent from the record with respect to Benjamin and Sonia Graduses' 1967 return because the return itself does not disclose the date it was filed. However, it was signed well before the due date, and the parties apparently do not dispute the filing date. In any event, the filing date becomes immaterial because we find it was a false or fraudulent return filed with intent to evade tax. See sec. 6501(c)(1).↩
5. Initially, Benjamin Gradus testified that they had $410,000 of undeposited cash; but on brief petitioners requested a finding of fact that cash on hand was "in excess of $300,000."
6. By stipulation, respondent has given petitioners credit in the net worth computation for $40,252.90 in cash that Bella Gradus Lotto withdrew from her savings accounts on January 31, 1967, and gave to Benjamin. This exhausted her savings accounts.↩
7. On brief, petitioners conceded the fraud issues for 1970.↩
8. See, e.g., Yellow Cab & Car Rental Co. of Gulfport,Miss., Inc. v. Commissioner,T.C. Memo. 1974-79↩, appeal dismissed (5th Cir. 1975).
9. We leave the computation of omitted sales to the parties under Rule 155.↩